RECEIVERS (CAMPBELL v.). See Case No. 2,367.

RECEIVERS (DALTON v.). See Case No. 3,-550.

RECEIVERS (MILES v.). See Case No. 9,-544.

RECEIVERS (MUSSELWHITE v.). See Case No. 9,972.

## Case No. 11,625.

RECKENDORFER v. FABER.

[12 Blatchf. 68; 1 Ban. & A. 229; 5 O. G. 697.] [1]

Circuit Court, S. D. New York.    May 20, 1874. [2]

PATENTS—PENCIL WITH ERASER—NOVELTY.

1. The claim of the letters patent granted to Hymen L. Lipman, March 30th, 1858, and extended for seven years from March 30th, 1872, for a "combination of a lead pencil and eraser," namely, "The combination of the lead and india rubber, or other erasing substance, in the holder of a drawing pencil, the whole being constructed and arranged substantially in the manner and for the purpose set forth," cannot, in view of the state of the art and of prior inventions in public use, be sustained as a broad claim for an implement which is a combined lead pencil and eraser, nor as a claim for the mere combination of a lead pencil with an eraser, when the lead and the erasing material have a common sheath, nor as a claim for such mere combination when the sheath is of wood, susceptible of being cut away as the implement is worn by use, nor as a broad claim for every supposable mode of combining, within the holder of a drawing pencil, the material for erasing with the lead of the pencil, but, if such claim be sustained as valid, it must be limited to the insertion, in the pencil holder, of an erasing substance, by means of a groove in such holder, of dimensions differing from the groove containing the lead.

1 [Reported by Hon. Samuel Blatchford. District Judge, and by Hubert A. Banning, Esq., and Henry Arden, Esq., and here compiled and reprinted by permission.]
2 [Affirmed in 92 U. S. 347.]

2. The claims of the reissued letters patent granted to Joseph Reckendorfer, March 1st, 1870, for an "improvement in pencils," the original letters patent having been granted to him November 4th, 1862, namely, "1. A pencil, composed of a wooden sheath and lead core, having one end of the sheath enlarged and recessed, to constitute a receptacle for an eraser, or other similar article, as shown and set forth. 2. A pencil, the wooden case of which gradually tapers from its enlarged and recessed head towards its opposite end, for the whole or a portion of its length, substantially as shown and described," are claims which only superadd to the devices of Lipman an enlarged head and a uniform taper.

3. Such claims of the Lipman and Reckendorfer patents are not infringed by a pencil in which the india rubber is inserted in a paper tube placed on the end of a pencil, even though the paper sheath can be cut away, as the eraser is worn, and the wood containing the eraser in the Lipman instrument can be cut away.

4. Semble, that, neither the pencil, nor the eraser, nor the combination of the two, being new, it was no invention to increase the size of the eraser, in the combination, that having been before done in a separate eraser.

5. Whether the uniting of two implements in a common handle or holder constitutes patentable invention, quere.

[This was a bill in equity by Joseph Reckendorfer against Eberhard Faber, to restrain the infringement of letters patent No. 19,783, granted to H. L. Lipman March 30, 1858, and letters patent No. 36,854, granted to Joseph Reckendorfer Nov. 4, 1862, reissued March 1, 1870 (No. 3863). The bill also prays for an accounting and damages.]

Charles M. Keller and Edmund Wetmore, for plaintiff.

George Gifford and John S. Washburn, for defendant.

WOODRUFF, Circuit Judge. The bill of complaint herein charges the defendant with infringing three several patents—one issued March 30th, 1858, to Hymen L. Lipman, for a "combination of a lead pencil and eraser," extended, on the 25th of March, 1872, for a further term of seven years from the 30th of March, 1872, and assigned to the complainant; one granted to the complainant on the 4th of November, 1862, and reissued on the 1st of March, 1870, for an "improvement in pencils;" and the third granted June 4th, 1872, to Teile Henry Muller, for an "improvement in lead pencils," and assigned to the complainant. The answer denies that the respective patentees are the first inventors of the improvements claimed, denies that the defendant has infringed such patents, alleges that the patents are void on various grounds, but especially, by original and amended answer, avers prior invention, knowledge and use of the devices in question by various persons named, and that the invention had been in public use and on sale for more than two years prior to the respective applications for such patents.

The patent thirdly named in the bill of complaint does not appear in evidence, and was not the subject of examination or dis-

cussion on the hearing. There is, therefore, no occasion to notice it further.

The patent to Lipman, in its specification, describes the invention thus: "I make a lead pencil in the usual manner, reserving about one-fourth of the length, in which I make a groove of suitable size, (A,) and insert in this groove a piece of prepared india rubber, (or other erasive substance,) secured to said pencil by being glued on one edge. The pencil is then finished in the usual manner, so that, on cutting one end thereof, you have the lead, (B,) and, on cutting the other end, you expose a small piece of india rubber, (C,) ready for use, and particularly valuable for removing or erasing lines, figures, &c., and not subject to be soiled or mislaid on the table or desk." At the conclusion, the patentee states and claims: "I do not claim the use of a lead pencil, with a piece of india rubber or other erasing material attached at one end, for the purpose of erasing marks; but, what I do claim as my invention, and desire to secure by letters patent, is, the combination of the lead and india rubber, or other erasing substance, in the holder of a drawing pencil, the whole being constructed and arranged substantially in the manner and for the purpose set forth."

The specification annexed to the reissued patent to Reckendorfer declares: "My invention is intended to provide a means whereby articles of a greater size or diameter than the lead may be securely held in the head of a pencil of otherwise ordinary or suitable construction, without making the body of the pencil cumbrous or inconvenient. To this end, my invention consists, first, of a pencil composed of a wooden sheath and lead core, having one end of the sheath enlarged and recessed, to constitute a receptacle for an eraser or other similar article, as hereinafter stated; second, of a pencil the wooden case of which gradually tapers from the enlarged and recessed head towards its opposite end, for the whole or a portion of the length, as hereinafter set forth. The receptacle for the eraser, or other article, is formed in the head, without too much weakening the wood, owing to the form of the sheath, while, for the same reason, the end of the pencil which contains the ordinary lead is not cumbrous, nor clumsy, but can be readily held between the fingers, just as an ordinary pencil is." The further description shows that the groove in which the eraser is inserted is to be larger than the groove in which the lead is placed, as in the Lipman pencil. Next: "Pencils of equal size throughout have been heretofore made with a slip of rubber fitted in, in place of the lead, at one end, but such pencils have not become of any considerable practical importance. in consequence of the smallness of the rubber, and it has been held impracticable to make the rubber much larger, without too much weakening the wood, or making the entire pencil thick and awkward to han-

dle. By my invention, the size of the rubber may be so increased, while that of the lead remains the same, as to render it a very effective eraser, the size of the pencil head being such as to render it a convenient receptacle for a rubber of much more considerable size or diameter than the lead." The claims are: "1. A pencil, composed of a wooden sheath and lead core, having one end of the sheath enlarged and recessed, to constitute a receptacle for an eraser, or other similar article, as shown and set forth. 2. A pencil, the wooden case of which gradually tapers from its enlarged and recessed head towards its opposite end, for the whole or a portion of its length, substantially as shown and described."

Some observations, made in the progress of the argument, suggest the propriety of enquiring, and of stating what it is precisely, which these patentees profess, by their invention, to have improved. It was called, in the discussion, an "article of manufacture," as distinguished from a machine having operation or action, and in which combined parts may operate reciprocally or conjointly, so as to produce results due to their concurring influence. Without conceding that the distinction stated can, in its application to the subject of these particular patents, have any influence on the enquiry. whether any patentable invention is disclosed by the patents, construed in view of the state of the art, and of prior knowledge and use, it is proper to say, that the subject of these patents, though not involving the complication of devices which entitle it to be dignified as a machine, is, nevertheless, a tool or implement, to be used or employed to produce useful results, as much so as a pen, a stamp for printing or embossing letters or figures, a hammer, or a file. All these are but instruments and mechanical agents, which are to be operated by the skill of the user, to effect a purpose. True, they are articles of manufacture, and put on sale. So is almost every description of tool, implement, and other mechanical device, which is of such general utility as to be the subject of general request in the market. If there was a general demand for a particular machine, of the most complicated combination of mechanical devices, it would be manufactured, and be found on sale, everywhere within the range of such general demand. To call the subject of these patents, articles of manufacture, in likeness to ready-made clothing, or food, or medicine, would not truly represent their character or functions. It is a mechanical instrument, as much as a pen-knife, a corkscrew, a wrench, or a screw-driver; and the enquiry into its patentable character is—does it embody any new device, or combination of devices, producing a new result, or an old result in a different manner?

As a means of producing a mark, there is no pretence of its novelty. Pencils of the

same material, containing the same marking substance, inserted in the same groove, were common, before either of these patentees was born; and erasers, inserted in grooves, in wooden sheaths or holders, are proved to have been in public use and on sale before either of the alleged inventions. The proofs establish that, for all the purposes to which the complainant's pencils are adapted, pencils, made by inserting a marking material in a groove in the centre of a stick, which, in use, is to be cut away, to expose more and more of the marking material, as it wears away, or becomes blunted in use, were common; and erasers, in like form of pencils, having the erasing material inserted in a groove in the centre of a stick, which, in use, is to be cut away, to expose more and more of the erasive material, as it wears off, or becomes soiled or blunted in use, were made and on public sale. Not only so, these latter were of a size of sheath, sufficient in strength to allow the use of the desired size in the erasing material. There were thus in known public use two separate instruments, each consisting of a wooden sheath or holder, to protect its enclosure, and to be cut away, as the use of the enclosed substance might require, one of them containing, grooved therein, a material for making marks, writing, or drawing, and the other containing, grooved therein, an erasing material, for removing marks, writing, or drawing. Each was a specific instrument, to be used to produce entirely distinct and even opposite results. Not only so, experience had suggested the convenience of uniting these two instrumentalities in one implement, that is to say, the provision of a single or common holder for the marking material and the erasing material, at opposite ends, so that each should be present, or immediately in hand, when the other was used. This was illustrated by the use of a metallic adjustable holder, at one end grasping the marking material, and at the other grasping the erasing material, each made movable therein, as it became worn, instead of cutting away the holder itself; more strikingly illustrated by implements made by attaching to the end of an ordinary wooden pencil, a cap of india rubber, held thereto by its own compression, or by some metallic ring, band, or ferrule; also, by inserting the end of a pencil in the end of a tube in which india rubber was inserted at the other and outer end, of any desired size.

I am constrained, by what I deem the preponderance of the evidence, to find, also, that, before either of the alleged inventions of the above named patentees, complete, practical, and useful pencils were made, and put into open, practical use for several years, for writing, drawing, and erasing, constructed by removing the lead from a portion of the groove in an ordinary lead pencil, and substituting therefor, in such groove, india rubber, as an eraser. Thus, a form of com-

bined pencil and eraser was produced, having one wooden sheath or holder, with lead as a marking material at one end, and an eraser of india rubber at the other, the marking material and the erasing material being each strengthened and protected, and in use, as they wore off, more and more exposed by cutting away the wood of the pencil constituting their sheath.

What then remained which could be the subject of a patent, there being no claim that the materials themselves, or the process of preparation, was, in any sense, new? This enquiry will be important to the question, how far the patents held by the complainant have any validity.

(1.) But, first, I prefer to enquire—what, in view of this state of the art, the patents, construed most favorably to the patentees, and assuming their validity, can be deemed to include; and, next, whether, when so construed, the defendant has infringed the patents. The language of the specifications aids in this enquiry, by recognizing, to some extent, the state of the art above exhibited. Lipman declares that he makes a lead pencil in the usual manner. As a mere lead pencil, it has no novelty, and he claims nothing therefor. He inserts india rubber at one end, in which he makes a groove "of suitable size." This is quite indefinite. A suitable size may be large or small. It will depend upon the use to which it is to be applied; but his drawing shows a groove larger than that of the lead. This groove is to be made in the wood of the pencil. In terms, he declares what, in view of what has already been suggested, he must have declared, that he does not claim "the use of a lead pencil with a piece of india rubber, or other erasing material, attached at one end, for the purpose of erasing marks." He does claim "the combination of the lead and india rubber, or other erasing substance, in the holder of a drawing pencil, the whole being constructed and arranged substantially in the manner, and for the purpose, set forth." He cannot claim, and does not claim, to have invented, broadly, an implement which is a combined pencil and eraser. Such implements were already in use. He cannot claim the mere combination of a lead pencil with an eraser, the lead and the erasing material having a common sheath. That was not new. For the same reason, he cannot claim such mere combination, when the sheath is of wood, susceptible of being cut away as the implement is worn by use; and, this, also, forbids his claiming, broadly, every supposable mode of combining, within the holder of a drawing pencil, the material for erasing with the lead of the pencil. It follows, that, if the patent of Lipman be sustained, it must be limited to the construction which is exhibited in his specification, in those respects only in which it differs from those above described, that is to say, to the insertion, in the pencil holder, of an erasing substance, by means of a

groove in such holder, of dimensions differing from the groove containing the lead. Other modes of attaching india rubber to the holder are, both by the disclaimer and by the proofs, excluded. Not only so, the drawings annexed to the specification of the Lipman patent, the specification itself, and the samples of the pencils manufactured under the patent, all concur in showing, that the prominent feature of his alleged invention was the making the wood of the pencil holder the single instrumentality in containing and holding both the lead and the eraser, one end thereof being adapted thereto, by an enlarged groove to receive the eraser. In view of the state of the art, and the disclaimer in the patent, it cannot be construed as including a separate and distinct mode of securing the eraser to the end of a pencil. It was, therefore, competent and lawful for the defendant to attach india rubber to a pencil, by tying it thereto by a cord, securing it thereto by a separate band, or collar, or ferrule, of whatever material, other than a practical extension of the wood of the pencil sheath. Before the patent, india rubber had been attached by insertion in a metallic tube, placed on the end of a pencil. What the defendant is proved to have done is, to sell pencils having a paper tube placed on the end of a pencil, with india rubber inserted therein. This is not a pencil "constructed and arranged in the manner" set forth in the specification annexed to the Lipman patent, limited, as it must be, by the state of the art, and the disclaimer of the patentee. In the Lipman pencil, the device for holding the lead of the pencil and the eraser is single, and is definitely so described, with an exclusion of other modes of attaching the eraser to the pencil holder. In the defendant's pencil, the pencil holder does not contain the eraser, but such eraser is attached and secured to the holder by other distinct means. The device for holding the lead and the eraser is double and complex, and to say that it is constructed substantially in the manner set forth in Lipman's specification seems to me impossible.

It is argued, that, because this paper sheath can be cut away as the eraser is worn, it should be deemed an equivalent to the wood enclosing the eraser in the Lipman pencil. I am not willing to relax at all the just protection due to inventors against a merely evasive substitution of equivalents. But, it will be seen that the present patent, if valid, is not, broadly, for a combination of a lead, a holder, and an eraser; nor even for a lead and an eraser in the same sheath. It cannot be sustained, except for a special construction of the containing holder, and that is not adopted by the defendant. For the same reason, it is not material that, in one respect, the same result is produced, viz., that, in each, the sheath of the eraser can be cut away. If the construction is different, the mere producing of the same result does not make the defendant's device an equivalent, where the special construction is the distinguishing and patented feature of the thing patented.

My conclusion is, therefore, that, if the Lipman patent can be sustained at all, its true construction is so limited by the state of the art and the disclaimer of the patentee, that the defendant's pencil is no infringement.

The Reckendorfer patent is based upon that granted to Lipman, or rather it is applied to pencils constructed in like manner, so that, if the defendant does not infringe the one, he does not the other. It would be absurd to say, that making one end of a lead pencil larger than the other would be patentable. But, if it were patentable, the proofs show that pencils so made were not new, but were made, and in use, and on public sale, before the patent to Reckendorfer, and that such pencils were so made for the purpose of using the larger end to receive a cylindrical tube, as a penholder, while the other was left conveniently smaller, containing the pencil lead. Again, Lipman also made pencils with an enlarged end, to receive and hold the eraser. A pencil with a uniform taper, providing for an enlarged end, to become the recipient of some other device, was not new; and a pencil with an enlarged end, to receive and hold an eraser, was not new. There is little left, if anything, to be called invention, to be covered by Reckendorfer's patent. But, give him the most favorable view of his device, and it superadds to Lipman's devices the enlarged head and uniform taper of his pencil holder. In the very terms of his claim, it adopts the wooden sheath of Lipman, recessed to constitute a receptacle for the eraser, and the wooden case gradually tapering from its recessed head towards its opposite end. The considerations which lead to the conclusion that the defendant does not infringe the Lipman patent, must, under the proofs above lastly referred to, result in holding that the defendant is not shown to infringe either patent.

(2.) The conclusion that the patents cannot, in view of the state of the art and of the disclaimer in the Lipman patent, be so construed as to charge the defendant as an infringer, renders it unnecessary to consider the case further. But I do not wish to be regarded as affirming the validity of the patents relied upon by the complainant.

What did Lipman do or discover which can be called invention? Sticks grooved, and containing, in the groove, a marking substance—black lead and other materials—adapted to cutting away the wood as the marking substance was worn off, were common. Sticks containing an erasive material in a precisely like groove, and adapted to be cut away in like manner, were common, and the groove in these was of "suitable size" to admit a useful eraser. Sticks are also proved to have been in use and on sale, of precisely the same construction, having one

kind of erasing substance inserted at one end, for a pencil eraser, and another kind of erasing substance inserted at the other end, for an ink eraser. Combination of eraser and lead in the same stickholder was not new. If the pencil was not new, and the eraser was not new, and combination of the two was not new, was it invention to suggest that, theretofore, the erasive material, thus combined, was not large enough for many uses, and thereupon increase its size, when to do so was simply to do what had before been done in separate erasers? Or, to lay out of view what was proved to have been done before by Dunton and others, in making and using pencils with india rubber inserted in a portion of the groove originally containing the lead, and so assuming that a combined pencil and eraser had not before been made in one single sheath or handle, what, then, did Lipman invent? There was the pencil, and here was the eraser. Each had its own holder or sheath. If he had spliced the two together, for convenience in use, tying them with cord, or fastening them with glue, would that have been a patentable invention? Would the man who first put two blades of a knife in one handle, instead of one only, be an inventor? And would he be any more so if one of the blades was a file, such file blades having been in common use in a like separate handle? If, to attain the utility and convenience which the union of two implements produces, something new in construction of the implements, or some new device requiring thought or study, more or less, is necessary to unite them, such union may be patentable. But, here, each implement is constructed precisely as it was before, and the means of union was not in itself novel. It was like inserting two awls of different sizes or uses in one handle; or like the recent case before the commissioner of patents, in which the alleged invention consisted in uniting a putty knife and a glass cutter in the same handle. When the functions and uses of each are unaffected by the union, and the means of uniting has no novelty, it is not obvious, certainly, that anything of invention can be alleged of the combined implements. Sawyer v. Bixby [Case No. 12,398]. That the aggregated result may be very convenient, may, for that reason, be popular, and may find a ready sale, and that such sales are very large, and show a great demand, does not determine the question. As suggested in several cases relating to aggregations as distinguished from patentable combinations, the aggregate result may be the production of a better structure, as an aggregate, than was ever before produced, and yet, for the lack of novelty of device or new result, produced by the aggregation and due thereto, it may have no patentable quality. Haile v. Van Wormer [Id. 5,904], affirmed in supreme court [20 Wall. (87 U. S.) 353]: Sawyer v. Bixby [supra]; Sarven v. Hall [Case No. 12,-369]; Ex parte Van Wagenen, 1 Pat. O. G. 89; Ex parte Prindle, Id. 404; Ex parte La Due, Id. 549; Monce v. Adams, Id. 1; Ex parte Castle, 4 Pat. O. G. 179; Ex parte Morse, 3 Pat. O. G. 467. Whether these suggestions must lead to the unqualified declaration of the invalidity of the patents, or not, they certainly confirm the point above firstly considered, that, if the patents can be sustained, they are limited to the special construction of the pencils specified, and which the defendant does not infringe. This is sufficient to dispose of the case. The bill must be dismissed.

[On appeal to the supreme court, the judgment of this court was affirmed. 92 U. S. 347.]

RECORDER, The (UNITED STATES v.). See Cases Nos. 16,129 and 16,130.

RECOVERY, The (PRAY v.). See Case No. 11,379.

RECTIFYING ESTABLISHMENT (UNITED STATES v.). See Case No. 16,131.

RECTOR (GREENWOOD v.). See Case No. 5,792.

RECTOR (UNITED STATES v.). See Case No. 16,132.