NEWARK WATCH-CASE MATERIAL CO. v. WILMOT & HOBBS
MANUF'G CO.

(Circuit Court, D. Connecticut. March 27, 1894.)

No. 725.

PATENTS—INVENTION—WATCH PROTECTORS.

Patent No. 413,644, to Benfield, Aufhauser, and Milne, for a protector of
watches against magnetism, which is composed of highly magnetic metal
in two sections, joined by a coiled spring, the inner surfaces being cov-
ered with plush, and the outer with japan, paint, or like substances, is
void for want of invention in view of the prior state of the art.

This is a bill by the Newark Watch-Case Material Company
against the Wilmot & Hobbs Manufacturing Company for infringe-
ment of a patent for protectors of watches against magnetic in-
fluence.

Geo. Cook and A. L. Shipman, for complainant.

A. M. Wooster, for defendant.

TOWNSEND, District Judge. This is a bill in equity for in-
fringement of letters patent No. 413,644, granted October 29, 1889,
to T. Benfield, S. Aufhauser, and A. Milne, for a watch protector.
The patentees originally filed in the patent office six claims cover-
ing the elements of the alleged invention, but upon citation of
anticipations restricted the specification by disclaimer, and substi-
tuted a single claim for a combination, which was allowed, and is
as follows:

"As a new article of manufacture, a watch protector, adapted to hold or
contain a watch, and constructed of highly magnetic metal, and in two sec-
tions, the latter being joined by means of a coiled spring, the inner surface
of said sections being covered with plush or other soft nonmagnetic mate-
rial, and their outer surfaces with japan, paint, or other like substances,
substantially as set forth."

The object of the alleged invention, as stated in the specification,
is to provide an economical device which would prevent watch
movements from becoming magnetized by electric currents, and
protect the watch from injury. This protector was of such size
and shape as to allow the watch to fit snugly in it, and could be
easily removed whenever the wearer had no occasion to use it.
The defenses are noninfringement, that the claim merely covers an
aggregation of old elements, and that the patent is invalid in view
of the state of the art.

Infringement is proved. The contention of defendant on this
point, that the patent is limited to a construction of iron, is nega-
tived by the language of the specification, which describes the re-
ceptacle as constructed "of sheet iron or other highly magnetic
metal," or of "a piece of sheet metal, highly magnetic, and preferably
sheet iron." This limited construction, if supported, would be im-
material, inasmuch as the evidence shows that the defendant's
watch protector is not only an exact copy of complainant's in ex-
ternal appearance, but that the metal used is, in character and
operation, the same as that of the patent in suit, and is, for all

practical purposes, iron.   Every essential element of the alleged combination is old, as complainant's expert admits that, in view of the state of the art, to line such a protector with plush, or to cover it with japan, did not involve invention, and that the form of spring used was old.   It is also admitted that devices for protecting watches from physical injury, and their movements from magnetic influence, were old.   Patent No. 56,014, granted July 3, 1866, to W. W. Covell, Jr., describes a watch protector of such size and shape that a watch may fit snugly within it, made of brass or other metal, to protect the watch from external injury, and lined with soft material so as to prevent the case from getting scratched or worn, provided with a hinged spring, easily removed when not wanted, and capable of a construction which would permit the watch to be consulted without removing it from the protector. The only essential differences between it and the protector of the patent in suit were that, being designed for protection against pickpockets, and not against magnetism, it was provided with eyes and a pin, whereby it could be secured to the pocket of the wearer, and it was not limited in construction to highly magnetic metal.   The differences in finish and in details of construction of spring hinge and covering are, for reasons already stated, immaterial.   Patent No. 93,246, granted to W. O. Sumner, August 3, 1869, for a watch protector, shows a somewhat similar contrivance, the patent office model of which is of iron.

Complainant, in his specification, disclaims the devices formerly used for protecting watch movements from magnetism, and which were originally cited as anticipations.   It was well known in the art, long prior to complainant's alleged invention, that sheet iron, in the form of cases or rings surrounding an object, would prevent it from being affected by magnetism.   Devices of this character, to protect compasses, are shown in Kline patent, No. 16,845, and Pender patent, No. 44,451.   But patents Nos. 289,642, granted December 4, 1883; 312,458, granted February 17, 1885; and 365,-985 and 365,990, granted July 5, 1887, to C. K. Giles; and patent No. 403,211, granted May 14, 1889, to H. P. Pratt,—show the practical application of this knowledge to watch protectors.   The Giles patents described various kinds of protectors, among them being one (No. 312,458) where the watch case itself was made up with a sheet of iron between the case plates of gold or silver.   In patent No. 289,642, Giles describes the disastrous effect upon watches of dynamos and other electrical apparatus, and states as follows:

"It is well known that when watches are brought near to powerful magnets their utility is entirely destroyed, as the many parts of the movement become magnetized, and so the regularity of the movement is entirely destroyed.   At the present time, when powerful dynamo machines are in use all over the country for various purposes, the liability to this injurious disturbance in watches is greatly increased, for the magnets of these machines are frequently so powerful that persons coming near these machines will find the watch they carry affected, as described, by the magnet.   It is an object of my invention to overcome this difficulty, and completely protect the watch from the deleterious influence of magnets, so that it may be carried into the presence of dynamo machines, or into the presence of magnets elsewhere, with perfect security against injury; also to shield the watch from the mag-

netism and magnetic currents of the body. This result I accomplish by surrounding the works or the watch with a complete shield of highly magnetic metal, or an alloy or combination of metals which, in common language, may be said to absorb or turn aside the magnetic currents, thereby preventing their reaching the works of the watch movement."

Although the patentee describes such protector as a box, or case, preferably designed to go inside the regular case of the watch, he also suggests, as above shown, a case for the watch itself. He also states as follows:

"I have thus described one way in which my invention may be carried out practically, but I do not limit my improvement to this particular mode of embodiment. The shield may be of any suitable form and construction, provided only, it so nearly incloses the watch as to accomplish the object explained; and it may be made of any metal or compound which is adapted to secure the result described."

I have not overlooked the evidence that the claimed anticipations are mere paper patents, which have never been successfully used. But such objection is insufficient where the modifications merely consist in matters of detail which could have been made by any mechanic, or do not require invention. Pickering v. McCullough, 104 U. S. 310. The most that can be claimed for this patent is that it is for a more economical device, with higher finish, or greater beauty of surface, than had been heretofore made, and that it has been extensively adopted and used by the public. But it is well settled that these circumstances are not, in themselves, sufficient to constitute invention. Ansonia, etc., Co. v. Electrical Supply Co., 144 U. S. 11, 12 Sup. Ct. 601. In Duer v. Lock Co., 37 Fed. 342, where large and increasing sales were relied upon to support the claim of patentability, the court below held that the proof of acceptance by the public was not sufficient to demonstrate the inventive novelty of what appeared to be the product of ordinary mechanical skill. And the supreme court, affirming this decision, held that such a criterion was an unsafe one, as, among other considerations, the popularity might be due, as it apparently is in this case, to the more attractive appearance, or the more perfect finish, of the article. Such evidence is not conclusive of novelty, and still less of patentable novelty. Duer v. Lock Co., 149 U. S. 216, 13 Sup. Ct. 850; Grant v. Walter, 148 U. S. 547, 13 Sup. Ct. 699; McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76.

In order to constitute invention, there must be some contribution of creative thought. The fact of contrivance in the creation proves the fact of invention in its creator. But here no field was left for invention. The protectors against pickpockets of 30 years ago serve as the protectors against the dynamo of to-day by merely striking off the fastening device. The iron protector of Giles, inclosing a watch case or its movements, describes everything in the patent in suit, except old details of construction, or higher finish. The protector specifically described by him as designed to hold the movements of one watch would be practically the protector of the patent in suit for another watch smaller in size, and could be adapted to such use by any skilled mechanic. It is entirely clear that, the covering of the movements of a watch to protect against

magnetism being once conceded to be old, there is no novelty in the particular shape in which these coverings are made; it is a mere matter of mechanical taste or skill. Mr. Justice Brown, in Pope Manuf'g Co. v. Gormully, etc., Manuf'g Co., 144 U. S., at page 247, 12 Sup. Ct. 637. This case seems to fall within the principle applied where, by reason of the development of an art, new exigencies arise which demand new appliances, or the application of old appliances to new uses, analogous to those already known. An illustration especially in point is Hollister v. Manufacturing Co., 113 U. S. 59, 5 Sup. Ct. 717, where a form of revenue stamp was shown to possess novelty and increased utility, and, having been found to furnish a valuable means for the prevention of fraud, had been adopted for general use by the internal revenue bureau. But the court held that, the character of these frauds rendered possible by the stamp system of taxation, having called the matter to the attention of those persons competent to deal with the subject, suggested the necessary modification of previous devices so as to accomplish the desired object, and that such modified device was only the result of the application of the common knowledge and experience of such persons, and was in no sense the creative work of the inventive faculty. So, in Aron v. Railroad Co., 132 U. S. 84, 10 Sup. Ct. 24, where a patentee claimed a new form of railway car gates, especially adapted for use on the elevated railroads, the supreme court, affirming the decision of Judge Wallace, dismissing the bill, quotes from his opinion as follows:

"The patentee is entitled to the merit of being the first to conceive of the convenience and utility of a gate opening and closing mechanism which could be operated efficiently by an attendant in the new situation. His right to a patent, however, must rest upon the novelty of the means he contrives to carry his idea into practical application. It rarely happens that old instrumentalities are so perfectly adapted for a use for which they were not originally intended as not to require any alteration or modification. If these changes involve only the exercise of ordinary mechanical skill, they do not sanction the patent; and in most of the adjudged cases where it has been held that the application of old devices to a new use was not patentable there were changes of form, proportion, or organization of this character which were necessary to accommodate them to the new occasion. The present case falls within this category."

Here the development of the electrical art required merely such a developed article as the skilled artisan was competent to produce. These considerations seem to establish that, prior to the alleged invention, the public had acquired the right to use substantially the same devices, for the same and other uses; that, even if the use to which it was applied by the patentee were a different use, it was an analogous one, with no change in the nature of the result or one which did not involve invention in view of the state of the art. It further appears that the modifications introduced into the patented device were a mere carrying forward of the original thought, by changes in form, proportions, or degree. That these circumstances do not constitute invention, is conclusively established by the foregoing and other decisions. Smith v. Nichols, 21 Wall. 115; Pennsylvania R. Co. v. Locomotive Engine Safety Truck Co., 110 U. S. 490, 4 Sup. Ct. 220; Blake v. City and County of San

Francisco, 113 U. S. 680, 5 Sup. Ct. 692. See the cases collected on this point in Manufacturing Co. v. Cary, 147 U. S., at page 637, 13 Sup. Ct. 472.

It seems to me further that there is no such inter-correspondence of relations in said article as to constitute a combination. It is merely the principle of the pickpocket protector of Covell or Sumner added to the magnetic protectors of Giles and Pratt. The two elements thus physically included in a single device may make a better protector than anything heretofore produced, but there is no co-operation between them which produces a new result. In Hailes v. Van Wormer, 20 Wall. 353, it appeared that Hailes made a better stove than any that had preceded it. The pencil and eraser of Faber, in Reckendorfer v. Faber, 92 U. S. 347, were convenient, popular, and found a ready sale. But the alleged combinations were, in each case, held to be mere aggregations, because no one of the elements added to the combination anything more than its own separate independent effect. "The aggregate result may be the production of a better structure, as an aggregate, than was ever before produced, and yet, for the lack of novelty, of device, or new result, produced by the aggregation, and due thereto, it may have no patentable quality." Reckendorfer v. Faber, 12 Blatchf. 68, Fed. Cas. No. 11,625. Such unions are not the creation of new means, and do not involve the exercise of the inventive faculties. Rob. Pat. 154; Deere & Co. v. J. I. Case Plow Works, 6 C. C. A. 157, 56 Fed. 841, 65 O. G. 441; Pickering v. McCullough, 104 U. S. 310. In Watson v. Railway Co., 132 U. S. 161, 10 Sup. Ct. 45, where the patentee claimed a combination of an inside and outside grain door, the court held that there was a mere aggregation of an outside door and an inner door described in a previous patent, with certain of its attachments taken off by design or accident, and that such change was not invention. Let a decree be entered dismissing the bill.