### GOODYEAR and another *v.* HARTFORD SPRING AXLE Co.

*(Circuit Court, D. Connecticut. February 27, 1885.)*

PATENTS FOR INVENTIONS—NOVELTY—STEELE SAND-BOX FOR CARRIAGE AXLES.
  Letters patent No. 62,231, granted to John S. Steele, February 19, 1867, for an improved sand-box upon carriage axles, examined, and *held* void for want of novelty.

In Equity.
*Henry T. Blake*, for plaintiffs.
*Wm. Edgar Simonds*, for defendant.

SHIPMAN, J. This is a bill in equity to prevent the alleged infringement of letters patent granted to John S. Steele, February 19, 1867, for an improved sand-box upon carriage axles. The patentee says in his specification:

"My invention consists in a light, extra sand collar, C, placed upon a common axle a short distance from the wearing collar, A. The chamber, E, thus formed by the collar, A, collar, C, and covering, D; prevents the mud and dust from coming in contact with the wearing collar, A. The housing or covering, D, is formed by an expansion and continuation of the pipe-box, F."

The claim was for "the sand collar, C, and chamber, E, in combination with the extended pipe-box, F, for the purpose set forth."

The question in the case is that of patentable novelty.

A "common axle" is an axle that has a single nut in front, with a solid collar, or collar "shrunk on," at the inside end. The collar at the back forms a bearing surface, which receives the endwise play of the hub or of the edge of the axle-box, which is driven through the hub. The advantages of the axle were that it was "easily made and convenient to oil;" its disadvantage was that sand would find its way to the inside end, so that the surface at the collar was liable to be rapidly worn away. The "half-patent axle" was the common axle with the axle-box enlarged at the inner end, and projecting over and inclosing the collar. This was a slight improvement upon the common axle, but obviously did not exclude the sand from the surface of the wearing collar.

The "sand-band axle" of Asa Miller was another attempt to avoid the defect of the common axle. A loose collar was slipped over the square bar of the axle, and was pushed to a point within an eighth or a quarter of an inch of the wearing collar, thus leaving a chamber between the two collars. The second or loose collar was screwed into the wooden bed of the axle and was held firmly in position. A cast-iron circular band inclosed and covered both collars. This band was attached to the hub either by surrounding it or being driven into it. The design of the device was to form, by means of the two collars and the encompassing band, a "sand-box" which should collect and retain whatever dirt worked under the sand-band. The result was successful, although it made a somewhat clumsy hub, and the several parts could not easily be attached to each other with precision.

Steele's object was to improve upon the "half-patent axle" so as to prevent sand from wearing away the axle at its inner end. He added to the "half-patent axle," whose axle-box extended over the single solid collar, another and light solid collar, whereby a chamber was formed like that of Asa Miller, which collected and held the sand, and so prevented it from abrading the wearing surface of the collar. The device was both an actual and a commercial success, and remedied the defects of the different axles which have been described. The improvement consisted in adding to the half-patent axle the extra collar of Asa Miller, with whose invention Steele was familiar, and making it solid, like the ordinary wearing collar. This improvement would, very probably, have been formerly considered patentable, but since the decision in *Pennsylvania R. Co.* v. *Locomotive-engine Safety Truck Co.* 110 U. S. 490, S. C. 4 Sup. Ct. Rep. 220, illustrated by the decisions in *Collins Co.* v. *Coes*, 21 FED. REP. 38, and *Spill* v. *Celluloid Manuf'g Co.* Id. 631, it cannot be so regarded. The collar of the Asa Miller box became the collar of the Steele box, and was used for the same purpose, and with the same result, as in the Miller device, with no change in the manner of its application, except that it was made solid with the axle. When it is remembered that the wearing collar had also long been made in the same manner, this alteration was an obvious and ordinary improvement.

The bill is dismissed.