HALE & KILBURN MANUF'G CO. *v.* HARTFORD WOVEN WIRE MATTRESS CO.

*(Circuit Court, D. Connecticut. December 4, 1888.)*

PATENTS FOR INVENTIONS—NOVELTY—SPRINGS FOR CAR-SEATS.
  The first claim of letters patent No. 179,400, issued July 4, 1876, to Zenas Cobb, for an improvement in spring-seats, which describes an upholstered spring-seat, having spring sections adapted to be separately inserted or removed from below the frame, without disturbing the upholstering, is void for want of novelty, in view of the familiar method of constructing spring-seats

for beds, and the method of removal shown in the Kneppler patent of July 27, 1869. It describes simply the use in a car-seat of the separate spring sections of the bed-seat.

In Equity.

*Charles Howson* and *Benjamin F. Thurston*, for plaintiff.

*Charles E. Perkins*, for defendant.

SHIPMAN, J. This is a bill in equity founded upon the alleged infringement of letters patent No. 179,400, dated July 4, 1876, to Zenas Cobb, for an improvement in spring-seats. The patentee described, in his specification, his invention as follows:

"My invention has for its object to improve the construction of upholstered spring-seats for cars and other purposes, and to this end it consists, first, in arranging the spring of a seat in sections, which are separately adapted for application and removal from the under side of the upholstering through the bottom of the seat-frame, for the purpose of facilitating the construction of the seat, and preventing the upholstering from being disturbed or injured when it becomes necessary to repair the springs. It also consists in the method of constructing the spring sections; and it finally consists in stretching a strip of webbing from end to end of a spring section, over the tops of the springs, so as to form a curved elastic support, upon which the cushion or upholstering rests evenly at all points to prevent it from unequal wear."

The claims of the patent are as follows:

"(1) An upholstered or cushioned spring-seat, having its springs secured to the seat-frame in sections, which are separately adapted for application and removal from the frame without disturbing the upholstering, substantially as described. (2) The spring sections, consisting of the divided slat, E, having the raised end-pieces, j, the springs, C, clamped between the two divisions of the slat, and the webbing, H, stretched over the tops of the springs from one raised end-piece to the other, substantially as described. (3) The webbing, or other strip, H, combined with the springs of a seat-slat, and stretched from end to end of the latter over the springs, so as to compress them, and form an arc, or curved elastic surface, upon which the upholstering is uniformly supported, substantially as described, for the purpose specified. (4) The combination of the springs, C, webbing strip, H, clasps, D, I, and divided slat, E, substantially as described, for the purpose specified. (5) The combination of springs, C, webbing strip, H, clasps, D, I, and divided slat, E, with the seat-frame, A, and its upholstering or cushion, B, substantially as described, for the purpose specified."

The first claim only is said to have been infringed, and, if valid, it is infringed by the defendant corporation, by the manufacture and sale of car-seats under letters patent to Henry Roberts, dated December 31, 1881, May 1, and June 13, 1883. The question in the case is whether the first claim of the patent for an upholstered spring-seat, having spring sections, adapted to be separately inserted or removed from below the frame without disturbing the upholstering, one or more springs being supported in each separate slat, contains a patentable invention. Spring-seats for beds, composed of transverse slats, upon which were arranged coiled springs, which supported the mattress, and which were separately removed from above the frame, were in use before the date of the invention, and are shown in letters patent to James Blythe, dated May 19,

1863, and to F. C. Hagen, of June 29, 1869. A spring-bed bottom, which consisted of coiled springs fastened to three separately removable transverse slats, and which springs helped to support a woven-wire sheet, upon which the mattress was placed, is shown in letters patent to Alvis Kneppler, dated July 27, 1869. The specification says that the springs "are fastened to the cross-rails, e, of the frame, A, as shown." The defendants insist that the drawing shows that the cross-slats were fastened to the under side of the frame, and were removable from below. It is truly said by the plaintiff that this peculiarity is not mentioned in the specification, and it also says that the drawing is consistent with the fastening of the rails upon the upper side of the frame, and indicates nothing upon the subject. It seems to me evident from the drawing that the cross-rails were fastened to the under side of the bed-frame, and that the springs were removed from below the frame. This belief is confirmed by the fact that the woven-wire sheet is firmly fastened upon the top of the frame, though capable of removal, and the natural way of introducing coiled springs into the structure would seem to be from under the frame. In view of the familiar method of constructing spring-seats for beds, which consisted of spring cross-sections, which are separately inserted, and can be removed from above the frame, and of the method shown in the Kneppler patent, it does not appear that there was patentable invention in the use of the Kneppler removable cross-slats in an upholstered car-seat. It was simply the use in a car-seat of the separate spring sections of a bed-seat, without substantial change in the manner of application, and without substantially distinct result. Indeed, if the Kneppler patent had not existed, it would seem to me somewhat questionable whether the removal of the spring sections from below instead of from above the frame could properly be considered to be an invention. Much reliance is placed by the plaintiff upon the extensive use of the Cobb seat, and the success which it has attained; but I am not sure that this success is not attributable in part to the details of manufacture described in the claims which are not infringed, as well as to the fortunate transference of the separate spring bed-slats to a car-seat. The first claim, for the general principle of separate slats removable from below, without regard to the details of construction, is within the doctrine of *Railroad Co.* v. *Truck Co.*, 110 U. S. 490, 4 Sup. Ct. Rep. 220. I place no stress in the decision of the case upon the L. W. Fillebrown patent of July 10, 1866, which showed a spring car-seat having springs fastened to slats extending lengthwise of the seat, and removable from below, and which were removable as a whole from the frame, without disturbing the upholstering, because I think that the question of patentable invention is presented more clearly and decisively by the Kneppler spring-seat. The bill is dismissed.