### NEWHALL v. J. JACOB SHANNON & CO.

(Circuit Court, E. D. Pennsylvania. July 22, 1911.)

#### No. 463.

PATENTS (§ 328*)—PRIOR USE—HANGER FOR SUSPENDING TELEPHONE CABLES.
    The Cameron patent, No. 595,693, for improvements in suspension of aerial cables, claims 5, 6, 7, 8, and 9, which relate to the hanger by which a telephone cable is suspended from a messenger, are void for prior public use of the device in numerous instances.

In Equity. Suit by Henry B. Newhall against J. Jacob Shannon & Co. On final hearing. Decree for defendant.

Alan M. Johnson, for complainant.
J. B. Fay, for defendant.

WITMER, District Judge. This is a bill in equity for an injunction and account based upon the alleged infringement by the defendant of letters patent No. 595,693, dated December 21, 1897, for certain useful improvement in suspension of aerial cables issued to George Cameron and assigned to the complainant; one of the defenses relied upon being that the alleged improvement or device patented was in public use for more than two years prior to the application for the patent, July 24, 1897. With the increasing popularity of the telephone and a large number of telephone lines or wires which it accordingly became necessary to employ in telephone systems, the advantage of collecting such lines or wires into the form of so called "cables" was early realized. The approved construction of such cables and one that has been in use for many years involves the encasing of a number of insulated pairs of wires within a leaden tube, the latter being then suspended from poles, buildings, or like supports, just as the single wires had previously been, or else run through underground conduits. In suspending such cables some difficulty was encountered by reason of the soft and yielding character of the encasing material which

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rendered it impossible to subject the same to any great tension, such as would be necessary if the cables were suspended only at infrequent intervals. A strong steel wire or cable called a "messenger" is accordingly utilized to support the telephone cable proper, said messenger being attached to the poles or buildings, and the cable being suspended therefrom at frequent intervals by means of suitable "hangers."

The Cameron patent in suit, as stated by the patentee (page 1 of his specifications, lines 8 et seq.), "relates to aërial cables, and, first, to the method and means employed in stringing or putting them into position, and, second, to the hanger used in suspending the cable from its supporting wire." No attention need be given to the former, except so far as it may concern the consideration of the latter, inasmuch as it is understood that only claims 5, 6, 7, 8, and 9 of the specifications of said patent are declared on, that it is the hanger used in suspending the cable from the messenger which the defendant herein is alleged to have infringed. This hanger, as represented in the several figures of the patent drawing, and particularly of figures 7 and 8, is described as being "composed first of a hook having a large upper eye, and a lower eye, and, second, a flexible insulating chord or band, which may be made of fibrous material, as hemp or flax, saturated with a preservative material, as tar, preferably, a single piece made into loops and its ends secured, or it may be cut as an endless loop from any suitable insulating material, as rawhide, etc., and folded into small loops." The hook referred to being in the form of the letter "S" is further described as being made of wire and bent so that the lower part of the upper eye will have an open space smaller than the diameter of the messenger over which it is intended to pass, and the lower eye practically closed through which it is contemplated that the double flexible chord should be placed and the end thereof passed between the strands of the first end, and then in the same manner looped around the cable to be supported. The structure of the cable hanger proper as described in the different claims, so far as patentable merit is concerned, is substantially identical in scope, the minor differences set up in certain of the subelements being inconsequential and without patentable significance sufficient to distinguish one from the other.

Was the use and sale by the defendant, which is not disputed, without license from the complainant, of this hook and flexible chord assembled as described. and known in trade as the marline cable hanger, an infringement of the complainant's Cameron patent? The defendant contends that the patent is invalid, because (a) of prior use; (b) the patentee is not the inventor; (c) of prior patents; (d) the patent is void on its face.

The evidence presented convinces beyond a reasonable doubt that numerous persons used a cable hanger embodying the alleged invention a considerable period of time over two years antedating the alleged patent of July 24, 1897. This conclusion is inevitable without even taking into account the testimony of the so-called patentees, Cameron and McCoy. The testimony of Frederick J. Crockett, Hugh

A. McCoy, Michael Eagan, Thomas P. Bannon, Elijah Hebb, Daniel McDonald, and Leod McLeod does not fail to make an impression for truthfulness and accuracy notwithstanding the insinuations and aspersions of counsel for the complainant which was indeed a full test of each and all of their patience.

Mr. Crockett testified that he was employed by the New England Telephone & Telegraph Company as inspector and chief inspector from 1886 to 1889; as special inspector in 1890; in charge of inside installation from 1891 to 1893; and as foreman or general foreman in the construction department from 1893 to 1903; that between 1891 and the year of the Cameron patent practically all cables placed by his company were hung and supported from a week to six months by hangers like the Cameron patent. He fixes the year 1891 positively, since he went to the World's Fair in 1890, after he had served two years as foreman. The witness furthermore says that it is his impression that such hangers were in common use in 1888 and 1889 while he was serving as inspector. Mr. McCoy, division superintendent of the New England Telephone & Telegraph Company, states that marline hangers, like the Cameron patent, were used prior to 1892 and possibly in 1890; that in 1893 similar hangers supported a cable in Winchester, Mass., more than a year.

Mr. Eagan states that he was a lineman for the Western Union Telegraph Company from 1887 to 1892 or 1893; that while in this position he, with others, began using hook and marline cable hangers in 1888. He made such as they used, which was offered in evidence, resembling in every particular the one patented. The witness further stated that he helped to erect certain cables, supported by such hangers, which were run in Boston in order to carry the wires removed from certain buildings which were replaced by the Fiske Building, and to carry the wires removed from the old post office replaced by the Exchange Building. These hangers were used as permanent supports of the cable. From examination of the city records it appears that the Fiske Building was completed in December, 1889, and the Exchange Building in October, 1891.

Mr. Bannon testified that as foreman of construction for the New England Telephone & Telegraph Company from 1882 to 1890 he used marline cable hangers to support cables from messenger wires from 1887 on; that from 1890 to 1894, while working for the Boston fire department, he on three different occasions used the same hangers to support aërial cables. The witness made such a one as were used resembling the patent.

Mr. Hebb states that while in the employ of the Western Union Telegraph Company from 1882 to 1888 he helped to use marline hangers of the Cameron patent type in replacing wires about the construction of the Fiske Building and the Exchange Building. He further says that in 1891, while working for the Postal Company, the same were used for similar purposes.

Mr. McDonald testified that while in the employ of the New England Telephone & Telegraph Company in 1891 he helped to erect a cable on School street, Sommerville, Mass., which was supported from messen-

ger wire by marline hangers like the patent; that from 1891 to 1896 it was the common practice of his company to attach such cables to messenger wires by such hangers.

Mr. McLeod testified that he assisted in making the change of wires about the Fiske and Exchange buildings, and that cables were attached to the messenger wires by marline hangers of the type patented; that during his employ from 1887 to 1894 by the Western Union Telegraph Company it was their custom to support cables in like manner.

The testimony of these witnesses fixing the time and place when and where these marline hangers were used, and that they were used for the practical purpose of suspending aërial cables from messenger wires and accurately describing the same, is uncontradicted. Notwithstanding the frailties of the human mind and the lapse of time, it clearly outweighs the presumption in favor of the validity of the patent. The use as shown having been a public use, and not for the purpose of experiment or to perfect and complete the successful operation of the alleged invention, it follows that this patent, No. 595,693, to the extent of the claims involved in this suit, is held void by reason of the prior use of the alleged invention for more than two years before the date of the application.

There are other reasons why the patent cannot be sustained, which I will not discuss. Suffice to say that the patentee is not the inventor. Use of an old device for a new and analogous purpose is not invention. Pennsylvania Railroad Co. v. Locomotive Truck Co., 110 U. S. 490, 4 Sup. Ct. 220, 28 L. Ed. 222. The combination of hook and chord in its form as used is surely not of late origin. Attached to a single chord the hook has been in unlimited use, with a loop chord it has also long been in use for suspending weights of various forms and kind. These and other reasons might be assigned for refusal to sustain the patent, but the former, that of prior use, is deemed sufficient to warrant the action of the court.

The bill is therefore dismissed, at the cost of the complainant.