## UNITED STATES HOFFMAN MACHINERY CORPORATION v. PANTEX PRESSING MACH., Inc.

## PANTEX PRESSING MACH., Inc., v. UNITED STATES HOFFMAN MACHINERY CORPORATION.

### Nos. 4334, 4375.

Circuit Court of Appeals, Third Circuit.

Nov. 11, 1930.

BUFFINGTON, Circuit Judge, dissenting.

William G. Mahaffy, of Wilmington, Del. (Charles Neave and Maxwell Barus, both of New York City, of counsel), for United States Hoffman Machinery Corporation.

Ward & Gray, of Wilmington, Del. (Thomas G. Haight, of Jersey City, N. J., Odin Roberts, of Boston, Mass., and J. Granville Meyers, T. J. Johnston, and Charles S.

686

Jones, all of New York City, of counsel), for Pantex Pressing Mach., Inc.

Before BUFFINGTON and DAVIS, Circuit Judges, and JOHNSON, District Judge.

DAVIS, Circuit Judge.

This is an appeal from a decree of the District Court holding claims 2 and 5 of United States letters patent No. 1,193,093 valid and infringed and claims 2 and 4 of United States letters patent No. 1,326,982 invalid for want of invention.

Patent No. 1,193,093, issued to Benjamin Weinberger August 1, 1916, relates to improvements in garment-pressing machines, and more particularly to an air-suction drier to a garment press, which consists of a fixed bed or buck on which the garment to be pressed is laid, a pivoted head which comes down upon the buck to apply pressure to the garment, steam-heated chambers in both the head and the buck used to supply heat to assist in pressing and drying the moistened garment, means to supply moisture through a perforated head or buck or both upon the garment. What Weinberger did was to attach to the buck a suction pump which sucks air through the perforated plate of the buck and thus accelerates the drying of the buck pad and garment. The pump is represented in figure 2 by the numeral 14, the control valve by 15, and the treadle by which the valve is regulated by 16. To operate the

machine, the garment to be pressed is placed on the buck and moistened; the head is brought down upon it with the required pressure and then raised; the treadle controlling the valve is operated and the pump sucks air through the garment and buck padding. This is done with every one of the fifty "lays" required for the pressing of a suit of clothes, and it greatly aids in drying the suit and the buck. This hastened drying prevents the warping and mussing of the garment which would occur if it were handled before being dry, and also saves time in pressing, because it enables the operator to move the garment on the buck sooner than he otherwise could. It is alleged that it also results in better work because the garment dries before the fibers of the fabric straighten out and resume their normal shape.

The defendant says that the attachment of the suction pump to Hoffman's presser was anticipated and was also obvious to any person skilled in the art and so did not amount to invention.

In order to determine this question, it is necessary to know the state of the art at the time Weinberger claims to have made his invention.

The German patent No. 59423, issued to Bossen on May 5, 1891, disclosed a clothes-pressing machine which had a heated head and buck, means for bringing them together, and means for moistening the garment preparatory to pressing by spraying steam through the buck.

Hoffman's United States patent No. 928,199, issued July 13, 1909, on application filed December 1, 1904, added the improvement to Bossen of spraying the garment to be pressed through the head of the machine instead of through the buck. This improvement resulted in the use of less moisture, because the garment was laid with its nap side up, and it was this side which was moistened and with which the shaping and drying hot presser plate came in contact. When the steam came from the buck beneath the garment, it had to penetrate the entire thickness of the garment and its linings and often the double thickness of both before it could reach the surface to be pressed, but when steam was sprayed from the head on the nap side only, it would not saturate the entire garment, but moisten only the nap side which would dry more quickly.

The French patent No. 372,453 for improvements in machines for ironing linen, fabrics, etc., issued to Henri C. Chasles, November 1, 1887, discloses an apparatus working either by suction or compression for removing steam or moisture generated by the contact of the wet linen or garment with the hot iron. This patent illustrates a bed or buck with a central chamber having a perforated upper wall. Attached to this chamber is an ejector or fan used to produce a vacuum between the head and buck. This suction device operates to remove the vapor from the damp fabric while the pressing operation is going on.

The object of the device of both Chasles and Weinberger is the acceleration of drying by the removal of vapor or moisture from the fabric or garment on the buck, and, so far as the invention is concerned, it makes no difference whether the drying process takes place while the pressing is going on before the head is raised from the buck or after it has been raised, for both machines used essentially the same combination of elements which operated in practically the same way to produce the same result—the acceleration of drying by a current of air produced by a suction or compression device.

United States letters patent No. 962,213, issued to A. T. Hagen and D. M. Cooper, June 21, 1910, is for a machine for ironing and pressing goods, particularly shirt bosoms.

This patent uses substantially the same means to perform substantially the same object as does Weinberger's.

It is true that the Hagen-Cooper machine is particularly adapted for ironing bosoms and shirts, but it is not limited to this use and expressly states that it may "also be used with excellent effect in all ironing machines of this type whether for ironing cuffs, collars, shirts or goods which are not starched."

The hat-making industry discloses suction or compression devices by means of which hats are dried by passing currents of air through them substantially as Weinberger does through garments which are being pressed.

Tracy, in his patent No. 1,214,846, issued February 6, 1917, says: "After the upper

This machine has a fixed steam-heated head, 6, and a hollow bed or buck, 8, having its pressing surface perforated and covered with the ordinary muslin pad. One of the objects of the device was to remove moisture from the pad of the buck and the goods laid thereon by forcing or sucking a current of air through them. This was accomplished by sucking or blowing air through the pipe, 15, which is connected with the central chamber, 9, of the buck by means of a suction pump. This was done, to use the language of the patent, for the purpose of "removing the steam and moisture from the padded surface and the goods, thereby keeping the pad dry and delivering the articles in the best possible condition."

mold member has been seated, the air suction, or draft, is turned on by opening valve 23, and the mold member 3 thereupon raised, as soon as the crown of the hat is dry enough to retain its shape. The air instantly carries away any steam remaining in the lower mold part, and also assists in holding the hat in place thereon where suction is used. At the same time sufficient air will be passed through the crown of the hat to rapidly cool and dry the same, causing it to quickly set in the desired form."

Claim 3 of the patent reads as follows: "In the manufacture of felt hats, the steps which consist in drawing the hat to be formed

688

over a suitable mold; steaming such hat; and thereupon passing a current of air through the same until it has dried and set."

If the word "coats" is substituted for "hats," the word "pressed" for "formed," and "buck" for "mold," the claim would substantially disclose the inventive element in Weinberger.

The suction pump has commonly been used to draw currents of air through cloth, silk, cotton, worsted, and wool in the art and process of drying. The learned trial judge said that, long before the date of Weinberger's patent, suction devices were employed for drying purposes in the laundry art, in the hat-making art, and in the cloth-drying art, and that the "assumption may here be considered well founded that the suction device employed by Weinberger in connection with the old garment pressing machine was taken without substantial variation from the laundry, hat making or other art."

The prior patents to Hagen & Cooper, Chasles, Tracy, and others show substantially the same mechanical combination in laundry and hat-pressing machines as does Weinberger's garment-pressing machine. With all of these machines heat, moisture, and pressure are used. That in one industry the goods may be moistened before they are laid on the buck or bed, and in another afterward, does not affect the patentability of the means used for drying the goods. The drying operation is the same in all cases. That the same apparatus is used in the same way to suck air in the one case through a hat to dry it or in the other through a coat for the same purpose is immaterial as regards invention. It is evident that the plaintiff considers this to be true from the fact that it placed plates marked with the Hoffman and Spencer patents on a hat-shaping machine equipped with a suction dryer. To use the same well-known means on a garment-pressing machine to accelerate the drying of a coat that have been used on a hat-forming machine to accelerate the drying of a hat does not rise to invention. It illustrates the mere mechanical skill of one acquainted with the art in its natural development. The wonder is that some one long before Weinberger had not applied to garment-pressing machines this old and well-known means for drying in the laundry, hat-making and cloth-drying industries, for this old suction device when used in a garment-pressing machine required no change and performed no new function.

It is well settled that the application of an old process or machine to a similar or analogous subject with no change in the manner of application, and without any substantially different result, will not sustain a patent. Roberts v. Ryer, 91 U. S. 150, 23 L. Ed. 267; Pennsylvania Railroad Co. v. Locomotive Engine Safety Truck Co., 110 U. S. 490, 4 S. Ct. 220, 28 L. Ed. 222; Mast, Foos & Co. v. Stover Manufacturing Co., 177 U. S. 485, 20 S. Ct. 708, 44 L. Ed. 856; Motion Picture Patents Co. v. Calehuff Supply Co., Inc. (C. C. A. )251 F. 598; Guardian Trust Co. v. Downington Manufacturing Co. (C. C. A.) 29 F.(2d) 887. It follows that the patent must be held to be invalid.

The second patent involved in this suit was issued to James B. Spencer January 6, 1920. This patent is for "useful improvements in machines for pressing garments." There are in issue two claims, 2 and 4, which follow:

"2. In a machine for pressing garments, a steam distributing system having means including a normally closed valve openable at will for applying steam to a garment in the machine, steam operated means forming a part of the same system for withdrawing the steam from the garment and a normally closed valve openable at will for controlling the passage of steam to said withdrawing means."

"4. In a machine for pressing garments, the combination of lower and upper pressing elements having internal heating chambers, one of said elements having a steam distributing chamber, means for supplying steam to all of said chambers including a normally closed valve openable at will for controlling the steam supply to the distributing chamber, and a steam-operated suction device having its pressure side connected to the source of supply for said chambers and its suction side connected to the distributing chamber, the connection of said suction device with the source of steam supply having a normally closed valve openable at will for controlling the flow of steam thereto."

The novel element in this patent is the substitution by Spencer of the "ejector" in his drying device for the fan or pump in the Hoffman device. Spencer, in addition, operates his ejector by steam taken from the pressing machine supply.

The District Judge found this patent to be invalid on the ground that "the ejector was a well known suction means and an equivalent

for a rotary fan long prior to the filing of the Spencer application." If this statement is well founded in fact, the conclusion of invalidity is inevitable.

Chasles in his patent, mentioned above, says that the object of his invention was to remove by suction or compression "the vapor interposed between the heating-surface and the surface heated before the issue therefrom of the piece of fabric." He further says: "I produce a vacuum by any suitable means—such as an ejector or fan. In case the trough or iron c is heated by steam circulating in chambers d, as represented at Fig. 1 and 2, I employ, as may be required, the same steam

FIG. 2    FIG. 1.

for working the ejector." This disclosure is a clear anticipation of the Spencer patent.

William Paterson, in his British patent No. 3703, issued in 1912, says that the condensed steam from the felt bed is drained off "by means of an ejector or suction pump." In this device as well as in that of Chasles, the steam employed to heat the head then flows through a valve, which is controlled by a pipe, and ejector to draw air from the buck for drying purposes.

The Spencer patent was rejected in the Patent Office because anticipated by the patents of Paterson and Weinberger, but was allowed on appeal by the examiners in chief. We think that the Patent Office was right and that the patent was anticipated. In any event, the substitution of a well-known ejector for a fan to do exactly what the ejector and fan had long before been doing in the art does not rise to the dignity of invention.

It follows that both patents in suit are invalid and the decree is reversed as to the Weinberger patent, No. 1,193,093, and affirmed as to the Spencer patent, No. 1,326,-982.

BUFFINGTON, Circuit Judge.

I regard these two patents as of high merit and as making marked advances in an important industry. I am constrained to record my dissent.