## BRYANT ELECTRIC CO. v. INDUSTRIAL ELECTRONICS CORP.

### Civ. A. No. 4142.

United States District Court
D. New Jersey.
March 21, 1951.

---

602

George D. Richards, Newark, N. J. (Cooper, Byrne, Dunham, Keith & Dearborn, New York City, by Thomas J. Byrne, Victor S. Beam, New York City, J. Walter Greenbowe, Bloomfield, N. J., and William F. Kelly, New York City, of counsel), for plaintiff.

Leroy J. D'Aloia, Newark, N. J. (Mock & Blum, New York City, Asher Blum, New York City, of counsel), for defendant.

FAKE, Judge.

Plaintiff is the owner of two patents which were applied for simultaneously on June 24, 1942. One, the Hodgkins Patent #2,400,353, and the other the Smith-Steegstra Patent #2,355,476. It is conceded that the invention claimed in the Hodgkins patent was first in point of time, although the patent was granted later than the Smith-Steegstra patent.

Defendant pleads the invalidity of each of these patents on the ground that the elements involved in the combination claims sued upon were old in the art when the patents issued, and the accumulation of elements does not rise to the dignity of invention.

■ The problem for solution as to Hodgkins is whether or not the old elements brought together in its combination claims result in a " * * * new or different function or operation than that theretofore performed or produced by them". Lincoln Engineering Co. of Illinois v. Stewart Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008, approved in Great A & P Tea Co. v. Super-market Equipment Corp., 340 U.S. 147, 151, 71 S.Ct. 127. The last above cited case adds this at page 152 of 340 U.S. at page 130 of 71 S.Ct. " * * * only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable." In addition, defendant pleads in its answer that Hodgkins is anticipated by Babb, #2,341,520 (filed in 1941 and issued Feb. 15, 1944.)

■ A comparison of the electrical circuits depicted in the Babb patent with the circuit depicted in Hodgkins patent, shows that each of the elements of Babb are found in the elements of Hodgkins, save there is this difference: Babb shows an element 22 in Fig. 1, as in inductance and states: "To this end, while the by-pass circuit may include a suitable resistance, it is preferred to use an inductance 22 * * *". Thus Babb discloses the use of either an inductance 22 or a suitable resistance as is used in Hodgkins and Smith-Steegstra. Hodgkins, Figure 4, shows a resistance heater #20 inserted in his circuit which is placed there for the purpose of operating the bimetal member (heat responsive element 22), thereby, keeping that element in the locked-out position, and so cutting off the lamp circuit.

The object sought for in each of these patents, was the same, to wit; the automatic starting of a lamp, and in case of a failure to start, the locking-out of the starting circuit. Babb does it by means of a bimetal member and a measured or controlled electrical impedance produced by the use of an electrical inductance or suitable resistance. Whether the Babb patent is valid, or invalid as found in Bilofsky v. Westinghouse Elec. Supply Co., 2 Cir., 160 F.2d 154, is not material here as Babb is older than the patents in suit. Hodgkins brings about the locking-out of the starting circuit by the use of a bimetallic member which is kept deflected by means of an electrical heater, Fig. 4, #20. It was heat that functioned in Babb through elements #18, and #22, if a suitable resistance is used, and it is heat which functions in Hodgkins through elements #20 and #27. The difference, if any, arises from how and by what the heat is produced. Plaintiff argues

its circuit is a two-heater starter, while Babb's is only a one-heater starter. However, both are substantially equivalent as Babb teaches and discloses the use of a suitable resistance, which is a heater as element #22, in place of the preferred inductance and thus the difference between Babb and Hodgkins is only that of simple electrical design and rearrangement.

Exhibit P–17 depicts three circuits designated as Sketch A, B, and C; B and C being defendant's circuits and A being plaintiff's circuit. Rotors testified that Sketch C follows the teaching of the Babb patent owned or controlled by the defendant. Having held above that Babb and Hodgkins are equivalent, it is not necessary to decide this, but I agree with Rotors that the product that defendant has been manufacturing in volume follows the teaching of Babb and that it also infringes the invalid Hodgkins patent.

As to the validity of the Smith-Steegstra Patent in suit, it will be noted that its design follows closely the designs of the Hodgkins patent. The difference being that the heater is in series with the glow switch in Hodgkins, while in Smith-Steegstra it is in parallel. When closely analyzed, this constitutes a mere difference of design, nothing more.

As to Sketch B, it was conceded at the trial that the circuit there described infringes upon the claims of the Smith-Steegstra Patent if the latter is valid. I agree with this, but find the said Smith-Steegstra patent invalid for the reasons above-stated. An order will be entered finding the claims in issue of both patents in suit invalid for the reasons above-stated.

Plaintiff and defendant agreed and stipulated the following facts which the court adopts as part of its findings of ultimate and material facts.

1. Plaintiff, the Bryant Electric Company, is a Connecticut corporation and has its principal place of business and a manufacturing plant at Bridgeport, Connecticut. Plaintiff is engaged in manufacturing and selling electrical equipment.

2. Defendant, Industrial Electronics Corporation, is a New Jersey corporation and has its principal place of business and a manufacturing plant at Newark, New Jersey. It is engaged in manufacturing and selling electrical equipment.

3. This action was brought for infringement upon the following United States patents:

(a) No. 2,400,353 granted May 14, 1946 to plaintiff as assignee of the applicant Charles H. Hodgkins for fluorescent lamp starter and

(b) No. 2,355,476 granted August 8, 1944 to plaintiff as assignee of the applicants, Roy M. Smith et al., for fluorescent lamp starter.

4. Since the grant of the said two patents in suit, plaintiff has been and now is vested with title to the same.

5. This court has jurisdiction of the parties and the subject of the action.

6. The starter for fluorescent lamps (plaintiff's Exhibit P–14) exemplifies starters which were made for and sold by defendant in the United States from about June 1944 to about May 1945 and made by and sold by defendant from about 1945 until in the Fall of 1945.

7. The starters for fluorescent lamps (plaintiff's Exhibits P–15 and P–16) exemplify starters for fluorescent lamps made and sold in the United States by defendant beginning about September 1945 and now being made and sold by defendant.

8. The starter for fluorescent lamps (plaintiff's Exhibit P–18) is of the manufacture and sale of plaintiff and it exemplifies the construction of the starters made and sold by plaintiff in the United States beginning in the year 1941 and now being made and sold by plaintiff.

9. The drawing (plaintiff's Exhibit P–17) contains a true and correct representation of plaintiff's exhibits P–13, P–14, P–15 and P–16, that "Sketch A" at the top of Exhibit P–17 represents plaintiff's starter (plaintiff's Exhibit P–13) and circuit in which it may be used, that the sketch at the center of the drawing, marked "Sketch B" represents the said starter of defendant (plaintiff's Exhibit P–14) and circuit in which it may be used and the sketch at the bottom of the drawing, marked "Sketch C"

604

represents defendant's starters, plaintiff's Exhibits P–15 and P–16, and a circuit in which they may be used.

10. From in the year 1943 to and including the year 1947, plaintiff made and sold 2,950,531 starters exemplified by Exhibits P–12 and P–13 both of which operate upon the same principle.

11. Plaintiff has given and granted four licenses to others to manufacture devices under the two patents in suit and any patents upon inventions which are subservient to or improvements upon the patents in suit and that plaintiff has received in royalty at least $23,000 from these licensees.

12. Defendant's starter exemplified by plaintiff's Exhibit P–14 and shown on Sketch B of plaintiff's Exhibit 17 is charged to infringe upon claims numbered 4, 5 and 6 of Hodgkins patent No. 2,400,353 and claims numbered 6, 7 and 8 of Smith and Steegstra patent in suit No. 2,355,476 and defendant's starters exemplified by plaintiff's Exhibits P–15 and P–16 and shown on Sketch C of plaintiff's Exhibit P–17 are charged to infringe upon claims 4 and 5 of Hodgkins patent in suit, No. 2,400,353. No charge is made that the device of Sketch C infringes the Smith and Steegstra patent.

13. Fluorescent lamps came upon the market in 1938 and certain glow switches for starting them, manufactured under the Dench patent No. 2,200,443, came upon the market in 1939. These glow switch starters were successful and went into wide use. It developed that the operation of fluorescent lamps varies under different conditions of operation and particularly as the lamps deteriorated from use so that the problem of starting presented more difficulties and the persistent effort in starting, so characteristic of the Dench starter, became objectionable since these efforts produced blinking of the lamps, often annoying to the user thereof. Efforts which found their way on the market were made to overcome this objectionable blinking. The first of these was of the type disclosed in patent to Mueller No. 2,345,414 (plaintiff's Exhibit P–22) which embodied a fuse in series with the glow switch. This was objectionable since like any fuse it had to be renewed

and in this case the starter had to be renewed also.

Another type of the device is shown in Sanford patent No. 2,299,499 (plaintiff's Exhibit P–24). This was objectionable in that while it would automatically cut out the glow switch starter and the defective fluorescent lamp no provision was made for automatically resetting it and manual resetting had to be depended upon. In addition, the manual resettable switch was contained in a separate container from the glow switch.

Another type of the device is that shown in patent to Thayer No. 2,379,115 (plaintiff's Exhibit P–25). This was objectionable in that instead of interrupting the current through the fluorescent lamp it simply by-passed the glow switch starter and locked the lamp in circuit. This allowed the current to continue through the electrodes of the lamp, was wasteful of current and a fire hazard. All of the said devices have long since disappeared from the market. Devices made according to Gref patent No. 2,293,897 later appeared upon the market and are still being sold. Plaintiff is engaged in the sale of starters made under the Gref patent to a limited extent.

14. The problem presented to Hodgkins, the patentee of the Hodgkins patent in suit, was that of overcoming the objectionable blinking of the Dench glow switch starter by a simple automatic cut-out device which would not be wasteful of current and safe in its operation.

15. When defendant had devices exemplified by plaintiff's Exhibit P–14 made for it in May 1944 it had before it a specimen of the starters then being manufactured and sold by plaintiff and exemplified by plaintiff's Exhibit P–12.

16. Smith and Steegstra, later in time than Hodgkins, improved the device of the Hodgkins patent by avoiding the placing of their cutout device in series with the glow switch (since it was found that starters after use changed their resistance somewhat and different starters had different resistances) and placed their high resistance coil across the line or in parallel with both

the glow switch and the thermostatic switch.

17. The basic principle and sequence of operations are the same in Hodgkins and Smith-Steegstra.

18. Smith-Steegstra made their alleged improvement after Hodgkins made his alleged improvement.

19. The essential difference between the Hodgkins starter and the Smith-Steegstra starter is that the entire current flows through the glow switch of the Hodgkins starter and such current then flows in two parallel lines, one line being through the bi-metal 20 and the resistance 27 and the other line being through the resistance 20, both said lines joining at the point 8 of Fig. 4 of the Hodgkins patent; and in the Smith-Steegstra starter, part of the line current always flows through the resistance 25 of Fig. 4 and another part of the line current flows through the glow switch and the bi-metal thermostat switch and the resistance 20 of Fig. 4 of the Smith-Steegstra patent.

20. All the parts of the Hodgkins and Smith-Steegstra patents were separately old.

21. The matter of physically including the parts of the Hodgkins patent or the Smith-Steegstra patent into a can, once the basic principle had been established as to how best to connect them to obtain the desired preselected sequence of operation and have the two resistances operate on the same bi-metal was then a relatively simple matter.

22. The device disclosed in the drawings and description of the Hodgkins patent has never gone into commercial use.

23. The Babb Patent No. 2,314,520 filed February 20, 1941 has priority over the Hodgkins patent and Smith and Steegstra patent, each filed June 24, 1942.

24. The Babb patent discloses that the element 22 in Fig. 1 may be a resistance in place of an inductance in order to limit the current through the bypass circuit, so as to maintain the bi-metal switch 16 in deflected position. Whenever a current flows through a resistance, heat is generated in said resistance.

25. The device of the Gref patent is exemplified by Exhibit D–5, sold by General Electric Company; the Gref device automatically cuts a flickering fluorescent lamp out of circuit. After the flickering lamp has been replaced, it is necessary to press a button of the Gref device, in order to reset the Gref device for operating the replacement fluorescent lamp. Plaintiff itself is selling the Gref device to a limited extent.

This Gref patent No. 2,293,897 was filed August 22, 1940 and it has priority over the Hodgkins patent and the Smith-Steegstra patent.

26. The Spaeth device (United States patent 1,881,976, Exhibit D–8) discloses a discharge lamp and an automatic starter. If a lamp in the circuit becomes extinguished for any reason, such lamp remains extinguished until the power switch is first opened and then closed again.

27. Plaintiff gave defendant notice of the Smith-Steegstra patent in suit and defendant's infringement thereof shortly after August 8, 1944 and prior to the filing of the original complaint and plaintiff gave defendant like notice as to the Hodgkins patent in suit shortly after May 14, 1946 and prior to the filing of the supplemental complaint.

28. Heretofore, the defendant, Industrial Electronics Corporation, together with Maxwell Bilofsky, as co-plaintiffs sued The Bryant Electric Company (plaintiff herein) and Westinghouse Electric Supply Company, as co-defendants. The appellate decision in said prior litigation is reported in 160 F.2d 154. This prior suit was brought on the Babb patent. The device in issue in said prior suit was made according to the Smith-Steegstra patent in issue herein.

The finding of additional material and ultimate facts by the court are as follows:

1. Providing the can with two or more external pin contacts was merely a matter of fitting the can into the fixture. Some fixtures have two contacts. In such case the can must have two external pins. In other cases, the fixture has more than two contacts. In such case, the can must have the

same number of external contact pins as the fixture.

2. It would be ordinary design to provide a can to house the starter parts of the prior Babb patent D-1, and to provide such can with two external contact pins.

3. Sketch C of P-17 follows the prior Babb patent, as well as Hodgkins.

### Conclusions of Law

1. Claims 4, 5, and 6 of the Hodgkins patent in suit #2,400,353, are invalid for the reasons set forth in an opinion filed herewith.

2. Claims 6, 7, and 8 of the Smith-Steegstra patent in suit, #2,355,476 are invalid for the reasons set forth in an opinion filed herewith.